IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JAMES PAUL FOGARTY, a deceased person by and through PAUL FOGARTY, his natural parent and duly appointed guardian and conservator,<br><br>    Plaintiff,<br><br>v.<br><br>BARRY COUNTY, *et al*,<br><br>    Defendants. | No. 3:25-CV-05018-DPR |

**ORDER**

Before the Court is a Motion for Partial Judgment on the Pleadings. (Doc. 5.) Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Barry County and Sheriff Danny Boyd (collectively, "Defendants") move for dismissal of Count IV of Plaintiff's Complaint against them. Plaintiff filed Suggestions in Opposition (doc. 6), and Defendants filed Reply Suggestions (doc. 7). Upon review, the Motion will be **GRANTED**.

    **I.**    **Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed. A Rule 12(c) motion is reviewed under the standard that governs Rule 12(b)(6) motions. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). "When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

1

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Judgment on the pleadings is appropriate if "it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Westcott,* 901 F.2d at 1488 (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986)).

Because it was filed after the pleadings were closed, the Rule 12(c) Motion was properly raised. With the Rule 12(c) standard in mind, the Court turns to the relevant allegations set forth in the Complaint, which it accepts as true for the purpose of resolving the Motion.

## II. Factual Background

On August 30, 2019, James Paul Fogarty ("James") was adjudged to be totally incapacitated and totally disabled. (Doc. 1-2.) James's total incapacity and disability necessitated the appointment of a guardian and conservator. *Id.* Paul Fogarty ("Paul") was appointed as guardian of James's person and conservator of James's estate. *Id.*

Paul frequently summoned authorities to help control James's behavior. *Id.* On November 24, 2023, James began to exhibit irrational and erratic behavior. *Id.* On November 27, 2023, James and Paul departed their home to seek a 96-hour inpatient commitment for treatment for James. *Id.* On the drive to the hospital, James began to protest that he no longer wanted to go. Paul drove to the Barry County Sheriff's Office (the "Sheriff's Office") to seek assistance in admitting James to the hospital. *Id.* While at the Sheriff's Office, Paul explained to the on-duty deputies that he was James's legal guardian, James needed admittance to the hospital for a 96-hour commitment, Paul required help in getting James admitted, the court had already issued an order compelling the Sheriff's Office to assist with James's commitment, and James's recent behavior, along with the risk of imminent harm to himself or others, made this an urgent matter. *Id.*

While Paul was explaining the situation, James fled the Sheriff's Office but was stopped by Defendant Deputy Doe 1 in the parking lot. *Id.* Deputy Doe 1 remarked that he did not want to transport James to the hospital because the court order was "old." *Id.* Paul went to the courthouse to acquire an updated order. *Id.* Paul returned to the Sheriff's Office with the new order, and Deputy Doe 1 agreed to take James to the hospital. *Id.* Paul also went to the hospital, and when he arrived, he parked near the patrol vehicle. *Id.* Deputy Doe 1 informed Paul that James had gone into the hospital but was seen running out of the back. *Id.*

Paul was unable to locate James until November 29, 2023. *Id.* At 10:00 a.m., while searching for James, Paul learned that James had traveled approximately nine miles away to their second home. *Id.* Paul contacted the Sheriff's Office, and Defendant Deputy Doe 2 called Paul at 10:20 a.m. *Id.* Paul explained the situation, including that he was James's lawfully appointed guardian and that he possessed an updated court order. *Id.* Deputy Doe 2 told Paul that he needed to return to the Sheriff's Office to present the order. *Id.* Paul did so, and Deputy Doe 2 left to retrieve James. *Id.* Roughly fifteen minutes after Deputy Doe 2 departed, Paul saw James riding his bike on the highway. *Id.* Paul phoned the Sheriff's Office and attempted to locate James, but Paul lost sight of him. *Id.* Shortly thereafter, a semi-truck collided with James, who was run over by the trailer's rear axles and did not survive. *Id.*

III. Analysis

Count IV asserts a claim for breach of private duty under Missouri common law against Defendants. Defendants argue this claim is barred by sovereign immunity as to Barry County and by official immunity as to Sheriff Danny Boyd. Because this is a state-law tort claim, the Court applies Missouri substantive law to determine whether Defendants are entitled to immunity. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that federal courts sitting in diversity or

supplemental jurisdiction apply state substantive law) *Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 844 (D. Neb. 2018) (holding that a state's sovereign immunity doctrine is a matter of substantive law). Accordingly, Missouri law governs whether Count IV states a viable claim or must be dismissed based on immunity principles.

      a. **Count IV of Plaintiff's Complaint Against Barry County is Barred by Sovereign Immunity**

Defendants argue that Barry County is entitled to sovereign immunity under Missouri law. (Doc 5.) "Sovereign immunity remains the 'general rule' in Missouri, protecting public entities from liability for state tort law claims unless a specific exception applies." *Davis v. Buchanan Cnty. Missouri*, 446 F. Supp. 3d 493, 497 (W.D. Mo. 2020) (citing *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 491 (Mo. App. 2009); *Div. of Emp't Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 981 (8th Cir. 2017)). "Full common law sovereign immunity belongs only to state entities." *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. 2008). Missouri municipalities receive sovereign immunity for governmental functions, which are those functions performed for the common good. *Id*. Police functions are governmental functions. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. 1996).

"[…] Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. Ct. App. 2009). "Accordingly, to state a cause of action sufficient to survive a motion to dismiss on the pleadings, the petition, when viewed in its most favorable light, must plead facts, which if taken as true, establish an exception to the rule of sovereign immunity." *Id.* (quoting *Thomas v. City of Kansas City*, 92 S.W.3d 92, 96, 101 (Mo. Ct. App. 2002)).

Sovereign immunity is waived in two narrowly construed circumstances: "injuries (1) 'directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment' and injuries (2) resulting from the dangerous condition of public property." *Southers*, 263 S.W.3d at 609 (quoting Mo. Rev. Stat. § 537.600.1). A public entity may also waive immunity by purchasing liability insurance or participating in a liability risk pool, but only to the extent of that coverage. *See* Mo. Rev. Stat. § 537.610; *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. 2006). Outside these exceptions, Missouri courts strictly enforce sovereign immunity. *Church v. Missouri*, 913 F.3d 736, 744 (8th Cir. 2019).

Here, Barry County is a Missouri municipality and is therefore entitled to sovereign immunity for governmental functions. The conduct at issue is police activity, which is a governmental function. The two statutory exceptions to sovereign immunity—injuries caused by the operation of a motor vehicle and dangerous conditions on public property—are not implicated by the facts alleged in the Complaint. Plaintiff also does not allege that Barry County purchased liability insurance that would waive immunity under § 537.610. Because no statutory exception or waiver applies, Barry County retains sovereign immunity. Therefore, judgment in favor of Barry County must be entered as to Count IV.

    a. **Count IV of Plaintiff's Complaint Against Sheriff Danny Boyd is Barred by Official Immunity**

Defendants argue that Sheriff Danny Boyd ("Sheriff Boyd") is entitled to official immunity under Missouri law. (Doc 5.) Official immunity is an affirmative defense. *Christenson v. Freeman Health Sys.*, 71 F. Supp. 3d 964, 968 (W.D. Mo. 2014). "However, dismissal based on an

affirmative defense may be appropriate if the petition clearly establishes 'on its face and without exception' that the claim is barred." *Richardson*, 293 S.W.3d at 139.

Under Missouri law, the doctrine of official immunity protects public employees from liability for acts performed as part of their official duties, so long as those acts are discretionary rather than ministerial. *Southers*, 263 S.W.3d at 610–11. Discretionary acts require the exercise of reason and judgment in determining how or whether an act should be done, whereas ministerial acts are those of a clerical or routine nature that a public employee is required to perform in a prescribed manner without personal judgment. *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). Discretionary acts require "the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Id.* "A ministerial duty is clerical." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024). "The central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains any discretion in completing an act[.]"*Cunningham*, 689 S.W.3d at 495–96 (quoting *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. 2023)). "When even slight discretion exists, the duty is not ministerial." *Id.* "[A] police officer has the benefit of official immunity." *Boude v. City of Raymore, Missouri*, 855 F.3d 930, 935 (8th Cir. 2017) (quoting *Fonseca v. Collins*, 884 S.W.2d 63, 66 (Mo. App. 1994)).

In Court IV of the Complaint, Plaintiff alleges, "[b]y virtue of RSMo. 632.305, 632.310, and related statutes governing involuntary commitments, as well as the specific court orders compelling the Barry County Sheriff's Office to assist in transporting James, Defendants were

6

Case 3:25-cv-05018-DPR    Document 21    Filed 11/10/25    Page 6 of 10

under a ministerial obligation to carry out certain tasks with no discretion to refuse or delay."[1] (Doc. 1-2).

Plaintiff does not allege that Sheriff Boyd was present during any of the relevant events described in the Complaint. Accepting as true all factual allegations set out in the Complaint, Sheriff Boyd did not speak to Paul at the Sheriff's Office, he did not request that Paul obtain a new court order, he did not transport James to the hospital, and he was not present at the hospital when James fled the hospital. The Complaint does not allege that Sheriff Boyd took part in any of the decisions concerning whether or how the Sheriff's Office would respond to James's disappearance. Rather, the Complaint alleges that Sheriff Boyd had "the authority as a final decision maker regarding policies within the Barry County Sheriff's Office." (Doc. 1-2). Plaintiff alleges that Sheriff Boyd "enforced a policy requiring fresh and in-hand orders for involuntary transport[,]" and engaged in a "persistent and widespread pattern of ignoring valid guardianship and involuntary commitment processes[.]" *Id.* Finally, the Complaint states that "Sheriff Danny Boyd […] was on actual or constructive notice of the deputies' repeated refusals to comply with existing court orders and Missouri statutes governing 96-hour involuntary commitments[,]" and that "by failing to correct, discipline, or retrain deputies who consistently refused to assist incapacitated individuals—like James—Sheriff Boyd effectively demonstrated deliberate indifference of tacit approval." *Id.*

These acts described in the Complaint are discretionary, not ministerial. In *Southers v. City of Farmington*, the Missouri Supreme Court considered whether a Chief of Police received official immunity when the plaintiff alleged that he "was negligent in failing to properly implement

---

[1] Plaintiff's assertion that "Defendants were under a ministerial obligation […]" (doc 1-2) is a legal conclusion, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
7

vehicular pursuit policies for the City and in failing to properly train the City's officers in pursuit procedures." 263 S.W.3d at 621. The Court held that "their conduct at issue involves highly discretionary supervisory and policy decisions that the doctrine is intended to shield." *Id.* (citing *State ex rel. St. Louis State Hosp. v. Dowd*, 908 S.W.2d 738, 741 (Mo. App. 1995); *Jackson v. Wilson*, 581 S.W.2d 39, 44 (Mo. App. 1979)). Here, Sheriff Boyd is alleged to have enacted a policy requiring new orders for involuntary commitments and to have failed to properly supervise officers who refused to assist incapacitated individuals. As in *Southers,* these are the highly discretionary supervisory and policy decisions that the doctrine of official immunity in Missouri is intended to shield.

Additionally, "the central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains any discretion in completing an act[.]" *Cunningham*, 689 S.W.3d at 495–96. Plaintiff points to two Missouri statutes to support his contention that Sheriff Boyd was engaged in ministerial conduct. Section 632.305 concerns when a police officer "may take a person into custody for detention for evaluation and treatment at a mental health facility[,]" and Section 632.310 provides that a peace officer who transports a person to a facility for treatment shall furnish or arrange for transportation back to the person's residence in the case that the person is not accepted for admission by the facility. The fact that Missouri law confers a duty on peace officers to abide by court orders for detention and evaluation and provide transportation to a person not accepted by a mental health facility does not automatically make acts undertaken to accomplish those duties ministerial. These acts are not "clerical," and police officers, at the very least, retain "slight discretion" in how they complete these acts. And to the extent sections 632.305 and 632.310 leave even slight discretion to the officers performing those tasks, then—a fortiori—a sheriff who

8

was not on scene and is alleged only to have set policy and supervised is engaged in discretionary conduct protected by official immunity.

Finally, Plaintiff does not allege that Sheriff Boyd acted in bad faith or with malice. "Official immunity does not apply, and a public official may be held personally liable for the damages the official caused […] when a public official acts in bad faith or with malice." *Cunningham,* 689 S.W.3d at 495. "The relevant definition of bad faith, or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Id.* (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 fn. 7 (Mo. 2019)).

Plaintiff argues, "Deputies' taunts and refusal to search cannot be reconciled with a good-faith exercise of judgment." (Doc. 6.) However, the Complaint contains no allegation that Sheriff Boyd ever interacted with Paul or James. The conduct described by Plaintiff is attributed to Deputy Doe 1 and Deputy Doe 2. As discussed above, the Complaint alleges only that Sheriff Boyd failed to adequately supervise the deputies and enforced a policy which required new involuntary commitment orders. (Doc. 1-2). There is nothing in the Complaint that suggests that Sheriff Boyd acted with the intent to cause injury to James in his supervision of his employees or when he implemented policy regarding involuntary commitment procedures. Thus, the Complaint does not allege that Sheriff Boyd acted in bad faith or with malice.

For these reasons, the complaint clearly establishes on its face and without exception that Sheriff Boyd is a public employee who was engaged in discretionary acts performed as a part of his official duties, and those acts were not performed in bad faith or with malice Thus, official

immunity shields Sheriff Boyd from liability, and as to Count IV judgment must be entered in favor of Sheriff Boyd.

## IV. Conclusion

Based on the foregoing, after careful consideration, Defendants' Motion for Partial Judgment on the Pleadings is **GRANTED**. As to Count IV, judgment is entered in favor of Defendants Barry County and Sheriff Danny Boyd.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: November 10, 2025